J-S65030-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: K.S. A/K/A K.A.R., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: A.R., MOTHER | No. 1615 EDA 2014 |

Appeal from the Decree entered April 29, 2014,
in the Court of Common Pleas of Philadelphia County, Family
Court, at No(s): CP-51-AP-0000012-2014, CP-51-DP-00011706-2012,
FID: 51-FN-001970-2012

BEFORE:    PANELLA, OLSON, and PLATT*, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED NOVEMBER 10, 2014**

A.R. ("Mother"), appeals from the decree entered on April 29, 2014, that granted the petition filed by the Philadelphia County Department of Human Services ("DHS") to involuntarily terminate her parental rights to her minor, male child, K.S., a/k/a K.A.R. ("Child"), born in March of 2011, pursuant to section 2511(a)(1), (2), (5), (8), and (b) of the Adoption Act, 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b).  We affirm.

The trial court ably and adequately set forth the factual background and procedural history of this appeal, which we adopt herein.  Child was placed with his maternal grandmother as his foster parent on July 3, 2012. N.T., 4/29/14, at 14.  Child was adjudicated dependent on July 13, 2012. On January 6, 2014, DHS filed a petition seeking the involuntarily termination of Mother's parental rights to Child, and a petition seeking a

_____

* Retired Senior Judge assigned to Superior Court.

change in Child's permanency goal to adoption.[1]   On April 29, 2014, the trial

court held a hearing on the petition for the termination of parental rights and

goal change.

DHS presented the testimony of Linda McLean, the DHS social worker

assigned to the case between July of 2012 and February of 2014,  N.T.,

4/29/14, at 15, and the testimony of Nessa Williams, an employee for the

service provider, Women's Christian Alliance, from September of 2012 until

April of 2014.  *Id.* at 25, 37.  DHS also presented the testimony of Barbara

Bartley, the social worker assigned to the case on February 20, 2014.  *Id.* at

48.   After the conclusion of the hearing on April 29, 2014, the trial court

entered the decree terminating Mother's parental rights.

---

[1] The petition also sought the involuntary termination of the parental rights of Child's putative father, C.S., a/k/a C.A.S., to Child.  At the hearing on the petition, C.S. who was served with the petition, and who resided in California, was present via telephone, and had appointed counsel present to represent him.  N.T., 4/29/14, at 5-6.  C.S. adamantly disputed paternity, and maintained that he did not know Mother and that she did not know him. *Id.*  Counsel for DHS conceded that the individual on the telephone was unlikely to be the man that Mother had named as Child's father.  *Id.* at 6. At the hearing, Mother also identified C.W. as the father of Child.  *Id.* at 7-8. The trial court discharged the petition against C.S. as Mother never identified him as the father of Child, but permitted DHS to proceed against the unknown father in the termination action.  N.T., 4/29/14, at 8.  As the trial court reserved the issue of the termination of the unknown father's parental rights pending a petition by DHS, the trial court stated that it would later list a termination/goal change hearing.  *Id.* at 51.  At the time that the certified record was filed with this Court, the trial court had not granted the petition with regard to father, and, accordingly, had not changed the permanency goal to adoption, although DHS had changed its agency goal for Child to adoption.

On May 28, 2014, Mother timely filed a notice of appeal from the decree, along with a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

In her brief on appeal, Mother raises the following issue:

Did the [trial court] err in terminating Mother's parental rights and changing [Child's] goal to adoption where Mother was making efforts to meet her family service plan goals, including completing parenting classes, attending three (3) months of drug and alcohol treatment, and making official supervised and informal visits with [Child], where [C]hild knew and was bonded to Mother, and where there was not clear and convincing evidence that [Child] would not be harmed by the termination of Mother's parental rights?

Mother's Brief, at 5.[2]

In reviewing an appeal from the termination of parental rights, we review the appeal in accordance with the following standard.

[A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id.*; *R.I.S.*, 36 A.3d 567, 572 (Pa. 2011) (plurality opinion). As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id.*; *see also*

---

[2] We observe that Mother changed the language in her brief from that used in her concise statement and combined the three issues in the concise statement into one, but we find that she sufficiently preserved the issue in her brief for our review. *See Krebs v. United Refining Company of Pennsylvania*, 893 A.2d 776, 797 (Pa. Super. 2006) (stating that any issue not set forth in or suggested by an appellate brief's statement of questions involved and concise statement is deemed waived).

- 3 -

> ***Samuel Bassett v. Kia Motors America, Inc.***, 34 A.3d 1, 51 (Pa. 2011); ***Christianson v. Ely***, 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. ***Id.***
>
> As we discussed in ***R.J.T.***, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. ***R.J.T.***, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. ***In re Adoption of Atencio***, 650 A.2d 1064, 1066 (Pa. 1994).

***In re Adoption of S.P.***, 47 A.3d 817, 826-27 (Pa. 2012).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. ***In re R.N.J.***, 985 A.2d 273, 276 (Pa. Super. 2009).

Moreover, we have explained:

> [t]he standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

***Id.*** quoting ***In re J.L.C.***, 837 A.2d 1247, 1251 (Pa. Super. 2003).

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section

2511(a). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Here, we will focus on section 2511(a)(2).

Section 2511 provides, in relevant part, as follows:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

* * *

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

* * *

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

We have stated:

In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence

- 5 -

necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citations omitted).

The trial court found clear and convincing evidence in the record of Mother's ongoing unwillingness to provide care or control for Child or to perform any parental duties, and her failure to remedy the conditions that brought Child into care. Trial Court Opinion, 6/27/14, at 10, 14. Further, the trial court found that Mother would not be able to provide adequate care for Child in the foreseeable future. *Id.* at 12-13. Moreover, the trial court found that the termination of Mother's parental rights would be in Child's best interests. *Id.* at 10, 12-14.

With regard to section 2511(a)(2), Mother contends that she visited with Child at least sixteen times through both formal supervised visitation at Women's Christian Alliance and DHS's office, and informal visits at the home of Child's maternal grandmother. Mother also asserted that she attended three months of inpatient drug and alcohol treatment, satisfied her Family Service Plan ("FSP") goal of completing parenting classes, has been visiting with Child, and is working on achieving other listed goals. Mother alleged that she took these actions to remedy the causes of Child's placement so that Mother may eventually reunite with Child. She urges that the

termination of her parental rights under section 2511(a)(2) is against the weight of the evidence. ***See*** Mother's Brief, at 9.

Our Supreme Court set forth our inquiry under section 2511(a)(2) as follows.

> As stated above, § 2511(a)(2) provides statutory grounds for termination of parental rights where it is demonstrated by clear and convincing evidence that "[t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent."[].
>
> Th[e Supreme] Court has addressed incapacity sufficient for termination under § 2511(a)(2):
>
>> A decision to terminate parental rights, never to be made lightly or without a sense of compassion for the parent, can seldom be more difficult than when termination is based upon parental incapacity. The legislature, however, in enacting the 1970 Adoption Act, concluded that a parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties.
>
> ***In re Adoption of J.J.***, 515 A.2d 883, 891 (Pa. 1986) (*quoting* ***In re: William L.***, 383 A.2d 1228, 1239 (Pa. 1978)).

***In re Adoption of S.P.***, 47 A.3d at 827.

After a careful review of the record, we find no merit to Mother's argument. This Court has stated that a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. ***In re A.L.D.*** 797 A.2d 326, 337 (Pa. Super. 2002). A parent's vow to cooperate, after a long period of uncooperativeness

regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. *Id.* at 340. We adopt the trial court's discussion, analysis, and disposition of section 2511(a)(2) as this Court's own. *See* Trial Court Opinion, at 10-12 (finding that while Mother complied with parenting objectives of her FSP, she failed to meet the housing, drug and alcohol treatment, and visitation objectives of her plan). We find that there was clear and convincing, competent evidence that Mother did not remedy the conditions that caused Child to come into care, and has been, and continues to be, unable to provide proper care for Child, warranting the involuntary termination of Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2). *See In re Adoption of S.P.*, 47 A.3d at 826-27.

As we have determined that the requirements of section 2511(a) have been satisfied, we now proceed to review whether the requirements of subsection (b) have been met. *See In re Adoption of C.L.G.*, 956 A.2d 999, 1009 (Pa. Super. 2008) (*en banc*). This Court has stated that the focus in terminating parental rights under section 2511(a) is on the parent, but it is on the child pursuant to section 2511(b). *Id.* at 1008.

With regard to section 2511(b), Mother argues that the trial court improperly concluded that Child would not suffer irreparable harm if Mother's parental rights were terminated, based on the testimony of Ms. McLean and Ms. Williams relating to Child's bond with his foster parent, his maternal grandmother. *Id.* at 12. Mother contends that it is inappropriate to draw a

conclusion that Child would not suffer irreparable harm if Mother's parental rights were terminated simply from the fact that she is incapable of parenting Child. *Id.* at 13.

In reviewing the evidence in support of termination under section 2511(b), our Supreme Court recently stated as follows.

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re: T.S.M.*, 71 A.3d 251, 267 (2013).

As to the bond analysis, we have stated that, in conducting a bonding analysis, the court is not required to use expert testimony, but may rely on the testimony of social workers and caseworkers. *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010). This Court has also observed that no bond worth preserving is formed between a child and a natural parent where the child has been in foster care for most of the child's life, and the resulting bond with the natural parent is attenuated. *In re K.Z.S.*, 946 A.2d 753, 764 (Pa. Super. 2008).

Here, Mother failed to "exhibit [the] bilateral relationship which emanates from the parent['s] willingness to learn appropriate parenting. . . ." *In re K.K.R.S.*, 958 A.2d 529, 534 (Pa. Super. 2008). The trial court found, from the testimony of Ms. McLean (of DHS), that Mother, because of her absence from Child's life for the past two years and Child's placement with his maternal grandmother as his foster parent, did not put herself in a position to develop a real bond with Child. Trial Court Opinion, 6/27/14, at 12; *see In re J.L.C.*, 837 A.2d 1247, 1249 (Pa. Super. 2003).

Additionally, as part of its bonding analysis, the trial court appropriately examined Child's relationship with his foster parent. While Ms. McLean acknowledged on cross-examination by Mother's counsel that Child does recognize Mother, and Ms. Williams stated on direct examination by DHS's counsel and on cross-examination by Mother's counsel that there is a bond between Child and Mother, our Supreme Court has held that not all bonds are worth maintaining. N.T., 4/29/14, at 34, 38, 48; *see In re: T.S.M.*, 71 A.3d at 267-268 (stating that existence of a bond attachment of a child to a parent will not necessarily result in the denial of a termination petition, and the court must consider whether the child has a bond with the foster parents). In rendering its decision, the trial court considered that Child's maternal grandmother is a pre-adoptive foster parent. N.T., 4/29/14, at 23, 41, 51. After considering Child's relationship with Mother and his foster parent, the trial court concluded that the termination of

Mother's parental rights would not have a detrimental effect on Child, and would be in his best interest. Trial Court Opinion, 6/27/14, at 12-14.

Since there is competent evidence in the record that supports the trial court's credibility and weight assessments regarding Child's needs and welfare, and the absence of any bond with Mother that, if severed, would cause Child to suffer irreparable harm, we conclude that the trial court did not abuse its discretion in finding competent evidence to support the termination of Mother's parental rights under section 2511(b). *See In re Adoption of S.P.*, 47 A.3d at 826-27. Accordingly, we affirm the decree terminating Mother's parental rights to Child for the reasons set forth in the trial court's opinion filed on June 27, 2014. As we have adopted the trial court's section 2511 (a)(2) discussion, analysis and disposition as our own, the parties are directed to attach a copy of the trial court's June 27, 2014 opinion to any future filings made in this Court.

Decree affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/10/2014

- 11 -

THE FIRST JUDICIAL DISTRICT OF PENNSYLVANIA, PHILADELPHIA COUNTY

IN THE COURT OF COMMON PLEAS

| | |
|---|---|
| IN THE INTEREST OF: | : FAMILY COURT DIVISION |
| K.S. a/k/a K.A.R | : CP-51-DP-0001970-2012 |
| | : |
| APPEAL OF: | : |
| A.R. | : |

## OPINION

### PROCEDURAL HISTORY

On April 29, 2014, this Court held a hearing on the Petition to Terminate the Parental Rights of the biological mother of K.S. The Petition was filed by the Department of Human Services ("DHS") and served on all parties. A.R. ("Mother") was present at the hearing and represented by counsel. After a full hearing on the merits, this Court found clear and convincing evidence to involuntarily terminate the parental rights of Mother, A.R. to K.S.

In response to the order terminating her parental rights, Mother, by and through her counsel, filed a Notice of Appeal with Matters Complained of on Appeal attached thereto on May 28, 2014. This appeal now follows.

### STATEMENT OF MATTERS COMPLAINED OF ON APPEAL

Mother's Statement of Matters Complained of on Appeal is set forth in its entirety as follows:

1. The Court erred in changing the child's goal to adoption and terminating parental rights where the evidence showed that [M]other was making efforts to meet her family service plan goals, had completed many and had made some official visits to her child but also made unofficial visits at maternal grandmother's home;

2. The Court erred in terminating parental rights as there was insufficient evidence presented to break the bond the child shared with [M]other or to clearly establish that termination was in the child's best interest, where testimony that the child knew and was bonded to his mother;

3. The Court erred in terminating parental rights as there was insufficient evidence to break the bond the child shared with [M]other where there was not clear and convincing evidence that the child would not be harmed by the termination.

## FINDINGS OF FACT

On March 21, 2011, Mother gave birth to K.S. (Statement of Facts: K.S., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights). On March 23, 2011, the Department of Human Services ("DHS") learned that K.S. tested positive for marijuana at delivery. (Statement of Facts: K.S., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights). DHS also learned that Mother resided with her mother, S.R., the home was appropriate and Mother was adequately prepared to care for K.S. (Statement of Facts: K.S., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights). Mother declined Child Abuse Prevention and Treatment Act ("CAPTA") services. (Statement of Facts: K.S., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights).

On July 3, 2012, DHS received a General Protective Services ("GPS") Report stating that Mother left K.S. in an unfit home overnight in order to use drugs with friends. (Statement of Facts: K.S., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights). According to the Report, the home did not have a bathtub, kitchen, refrigerator, or food. (Statement of Facts: K.S., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights). The Report also stated that K.S. was crying and there was no milk in the home to feed him and his bottle was filled with water from

2

the back of the toilet. (Statement of Facts: K.S., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights). The Report further stated that the owner of the unfit home did not know that K.S. was left there until she went downstairs and found him. (Statement of Facts: K.S., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights). When police were called to the home, Mother returned stating that she had been in a fight and called the homeowner to inform the owner that she was going to hospital. (Statement of Facts: K.S., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights). The Report stated that Mother was high and the police officer did not feel she was capable to care for K.S. (Statement of Facts: K.S., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights).

On July 3, 2012, DHS obtained an Order of Protective Custody ("OPC") for the child. (Statement of Facts: K.S., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights). DHS placed K.S. in the care her maternal grandmother, S.R. (Statement of Facts: K.S., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights). DHS informed S.R. that Mother could no longer reside in the home. (Statement of Facts: K.S., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights).

DHS also visited the home on July 3, 2012 and did not find Mother present. (Statement of Facts: K.S., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights). Mother admitted to the allegations in the GPS Report and to using drugs. (Statement of Facts: K.S., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights).

At the Shelter Care Hearing on July 5, 2012, the OPC was lifted and the temporary commitment to DHS was ordered to stand. (Statement of Facts: K.S., attached

3

as Exhibit "A" to Petition for Involuntary Termination of Parental Rights). The Court also referred Mother to the Clinical Evaluation Unit ("CEU") for a drug screen, assessment and monitoring. (Statement of Facts: K.S., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights).

Mother participated in a Behavioral Health Assessment ("BHA") conducted by CEU on July 5, 2012. (Statement of Facts: K.S., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights). The BHA recommended Mother participate in a detoxification treatment program with continued stay based on medical necessity criteria. (Statement of Facts: K.S., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights). Mother was referred to Girard Medical Center Assessment Center. (Statement of Facts: K.S., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights).

At the Adjudicatory Hearing on July 11, 2012 held before the Honorable Thomas M. Nocella, the temporary commitment to DHS was discharged, and the child was adjudicated dependent and committed to DHS. (Statement of Facts: K.S., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights). Judge Nocella further ordered: Mother to be referred to the Achieving Reunification Center ("ARC"); Mother to be referred to CEU for assessment and forthwith screen; Mother to follow through with all CEU recommendations; K.S. may be moved to S.R.'s home once DHS verified that C.S. no longer resided in the home; and if K.S. is moved to S.R.'s home, DHS is to make a referral for kinship care. (Statement of Facts: K.S., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights).

The initial Family Service Plan ("FSP") Meeting was held on July 13, 2012, at which time the goal for the child was reunification. (Statement of Facts: K.S., attached as

4

Exhibit "A" to Petition for Involuntary Termination of Parental Rights). The FSP objectives for Mother were stated as: 1) provide appropriate supervision of K.S. at all times; 2) to meet all of K.S.'s basic needs, including attending medical appointments; 3) to locate appropriate housing; 4) to enter and comply with a treatment program to address her substance abuse issues; and 5) to improve the relationship with her parents; 6) to comply with and attend all visits with K.S. per court order. (Statement of Facts: K.S., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights). Mother participated in the meeting via telephone. (Statement of Facts: K.S., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights).

On October 4, 2012, CEU submitted a report stating that Mother was complaint with the July 13, 2012 Court Order, and she was referred to Sobriety Through Outpatient ("STOP") for intensive outpatient dual diagnosis treatment. (Statement of Facts: K.S., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights). However, the report also stated that Mother failed to attend her STOP intake appointment on August 16, 2012 and on July 13, 2012, she had tested positive for PCP and marijuana. (Statement of Facts: K.S., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights).

At the Permanency Review Hearing on October 15, 2012 held before the Honorable Thomas M. Nocella, the Court ordered Mother to only have twice weekly supervised visits for two hours at the agency. (Statement of Facts: K.S., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights). The Court also ordered: Mother be referred to CEU for a forthwith assessment and screen with monitoring; Mother to receive three screens prior to the next court date; and Mother to

follow through with drug and alcohol treatment recommendations. (Statement of Facts: K.S., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights).

On December 13, 2012, CEU submitted a report stating Mother tested positive on October 15, 2012 for barbiturates, PCP, cocaine and marijuana. (Statement of Facts: K.S., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights). The report also stated Mother tested positive for PCP and marijuana on November 20, 2012. (Statement of Facts: K.S., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights).

At the Permanency Review Hearing on December 14, 2012 held before Juvenile Master Clay Cauley, Sr., the Court ordered Mother be rereferred to CEU for a forthwith drug screen and assessment, and monitoring. (Statement of Facts: K.S., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights).

On January 22, 2013, Mother participated in a BHA conducted by CEU for re-assessment. (Statement of Facts: K.S., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights). BHA recommended the following: Mother to attend an intensive outpatient dual diagnosis treatment program with continued stay based on medical necessity criteria; the identified program was to provide individual therapy, group therapy, addiction education, life skills training, and 12-step meetings; that random drug tests will be part of the treatment milieu; and that this program will be followed by an outpatient program with continued stay based on medical necessity criteria. (Statement of Facts: K.S., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights). Mother was referred to and accepted by STOP. (Statement of Facts: K.S., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights).

6

On January 29, 2012, DHS held an FSP Meeting, and the goal for the child remained reunification. (Statement of Facts: K.S., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights). The FSP objectives for Mother were stated as: 1) to keep all supervised visits and maintain regular contact with K.S.; 2) to meet regularly with the agency social worker and follow through with the Individual Service Plan ("ISP"); 3) to participate in evaluation of drug and alcohol; 4) to comply with all treatment recommendations of provider; and 5) to attend parenting classes. (Statement of Facts: K.S., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights). Mother did not participate in the FSP meeting. (Statement of Facts: K.S., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights).

On March 8, 2013, CEU submitted a report stating that Mother failed to attend her STOP intake appointment on February 28, 2013. (Statement of Facts: K.S., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights). The report also stated that Mother tested positive for PCP on January 22, 2013. (Statement of Facts: K.S., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights).

At the Permanency Review Hearing on March 8, 2013 held before this Court, this Court ordered Mother be re-referred to CEU for a forthwith drug screen and monitoring. (Statement of Facts: K.S., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights). This Court also found that Mother attends Stop and Surrender Recovery House. (Statement of Facts: K.S., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights).

On May 31, 2013, CEU submitted a report of Non-Compliance. (Statement of Facts: K.S., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights). The Report stated that Mother had been administratively discharged on April

7

30, 2012 from the Stop and Surrender Recovery House because she violated her treatment program. (Statement of Facts: K.S., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights).

At the Permanency Review Hearing on June 28, 2013 held before Juvenile Master Carol A. Carson, the Court found Mother was minimally compliant with the Permanency Plan. (Statement of Facts: K.S., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights). The Court ordered Mother be re-referred to CEU for a forthwith drug screen and monitoring. (Statement of Facts: K.S., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights).

On September 16, 2013, DHS held an FSP Revision meeting, and the goal for the child was changed to adoption. (Statement of Facts: K.S., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights). Mother participated in the meeting via telephone. (Statement of Facts: K.S., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights). The FSP objectives for Mother were stated as: 1) to keep all supervised visits and maintain regular contact with K.S.; 2) to meet regularly with the agency social worker and follow through with ISP; 3) to participate in evaluation for drug and alcohol; 4) to comply with all treatment recommendations of provider; 5) to attend parenting class; and 6) obtain appropriate housing.

On September 18, 2013, CEU submitted a report of Non-Compliance. (Statement of Facts: K.S., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights). The Report provided that Mother had not complied with the Court Order of forthwith drug screen and monitoring by CEU. (Statement of Facts: K.S., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights). The Report also stated that Mother had not scheduled an appoint to be assessed by CEU. (Statement of

8

Facts: K.S., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights). In addition, the Report stated that Mother had reported to CEU on June 28, 2013 and returned a positive drug screen for cocaine, marijuana and PCP. (Statement of Facts: K.S., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights).

At the Permanency Review Hearing on September 26, 2013 held before this Court, this Court ordered child to remain as committed and visitation to remain the same. (Statement of Facts: K.S., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights).

On April 29, 2014, this Court involuntarily terminated Mother's parental rights to K.S. Thereafter, Mother filed an Appeal on May 28, 2014.

## LEGAL ANALYSIS

In articulating the appellate standard of review of a termination of parental rights, the Superior Court has stated,

> We are bound by the findings of the trial court, which have adequate support in the record so long as the findings do not evidence a capricious disregard for competent and credible evidence. *In re Diaz*, 447 Pa. Super. 327, 669 A.2d 372 (Pa. Super. 1995). Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by finder of fact. *In re B.G.S.*, 418 Pa. Super. 588, 614 A.2d 1161 (Pa. Super. 1992).
>
> *In re: Adoption of A.C.H.*, 2002 Pa. Super 218, P4; 803 A.2d 224, 228 (2002)

> When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. *See In re K.C.W.*, 456 Pa.Super. 1, 689 A.2d 294, 298 (1997). Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. *Id.* Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. *See In re Child M.*, 452 Pa.Super. 230, 681 A.2d 793, 800 (1996). We must employ a broad, comprehensive review of the record in order to determine whether

9

the trial court's decision is supported by competent evidence. *See In re Matsock*, 416 Pa.Super. 520, 611 A.2d 737, 742 (1992). *In re C.S.*, 2000 PA Super 318, 761 A.2d 1197, 1199 (Pa.Super. 2000). It is clear that in a termination proceeding, the focus is on the conduct of the parents. *In the Interest of A.L.D.*, 2002 PA Super 104, 797 A.2d 326 (Pa.Super. 2002); *In the Interest of M.D.*, 449 Pa. Super. 507, 674 A.2d 702 (Pa.Super. 2002).

*In the Matter of B.L.W.*, 2004 Pa. Super 30, P9; 843 A.2d 380, 383 (2004).

This Court found clear and convincing evidence to terminate Mother's parental rights pursuant to 23 Pa. C.S.A. §§ 2511(a) (1), (2), (5), & (8).[1]

The record demonstrates Mother's ongoing unwillingness to provide care or control for the children or perform any parental duties and her failure to remedy the conditions that brought the children into care. The documents and testimony discussed below provided this Court clear and convincing evidence that termination of Mother's parental rights would be in the best interest of K.S.

Mother's FSP objectives were established on July 13, 2012. (Statement of Facts: K.S., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights). Mother was ordered to comply with drug and alcohol treatment, attend medical appointments for the child, participate in parenting classes, obtain appropriate housing,

---

[1] (a) *General Rule.* --The rights of a parent regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

10

and participate in visitation. (N.T. 4/29/2014, p. 14, lines 24-25); (N.T. 4/29/2014, p. 15, lines 1-4). The record shows that Mother has only complied with her parenting FSP objective. (N.T. 4/29/2014, p. 16, lines 3-8).

Mother has failed to comply with her housing FSP objective. She has yet to obtain appropriate housing. (N.T. 4/29/2014, p. 15, lines 12-15). Mother has been moving from different residences since 2012 ranging from drug program housing to living with S.R., K.S.'s grandmother. (N.T. 4/29/2014, p. 15, lines 18-22).

Mother has failed to comply with her drug and alcohol treatment FSP objective. (N.T. 4/29/2014, p. 21, lines 4-6). Mother was offered the STOP Program, but did not continue with it. (N.T. 4/29/2014, p. 16, lines 16-18). She has also never completed a drug and alcohol program during the course of this case. (N.T. 4/29/2014, p. 20, lines 22-25). Mother was administratively discharged from a drug and alcohol program due to pending treatment violations. (N.T. 4/29/2014, p. 27, lines 4-11). Throughout the duration of the case, Mother has been ordered to go to CEU for drug screens, which have all resulted in positive screens. (N.T. 4/29/2014, p. 18, lines 5-6); (N.T. 4/29/2014, p. 19, lines 17-18); (N.T. 4/29/2014, p. 29, lines 8-12). Her latest results from September 26, 2013 showed that Mother tested positive for cocaine, THC and PCP. (N.T. 4/29/2014, p. 17, lines 19-21); (N.T. 4/29/2014, p. 18, lines 5-6).

Mother has failed to comply with her visitation FSP objective. From September 2012 to April 2014, Mother was offered thirty-eight visits at the Woman's Christian Alliance but only attended twelve. (N.T. 4/29/2014, p. 37, lines 24-25); (N.T. 4/29/2014, p. 38, lines 1-7). Mother was also offered fifteen weekly supervised visits at the agency, but only attended four. (N.T. 4/29/2014, p. 21, lines 13-14, 19-21). For the past couple of years, K.S. has only seen Mother at approximately six supervised visits. (N.T. 4/29/2014,

11

p. 22, lines 4-9). In addition, there were two reported incidents that occurred at S.R.'s house. In one incident, Mother removed K.R. without permission from S.R.'s house for several hours without notifying anyone. (N.T. 4/29/2014, p. 31, lines 17-24); (N.T. 4/29/14, p. 32, lines 1-8). The other incident occurred in March 2014, where Mother broke S.R.'s window with a rock. (N.T. 4/29/14, p. 32, lines 12-13); (N.T. 4/29/2014, p. 52, lines 9-11).

Based upon the testimony elicited at the Termination Hearing as well as the documents in evidence, this Court found clear and convincing evidence to terminate Mother's parental rights pursuant to 23 Pa. C.S.A. §§ 2511 (a) (1), (2), (5), & (8) as Mother has failed to remedy the conditions that brought the children into care and will not be able to provide adequate care for the children in the foreseeable future. DHS's testimony was virtually uncontested by Mother's counsel.

This Court further found that because there was not a strong bond between Mother and her children, terminating Mother's parental rights would not cause the children irreparable harm and would be in the best interest of the children pursuant to 23 Pa. C.S.A. §2511(b).

This Court heard testimony from the DHS Worker and Women's Christian Alliance Provider Worker concerning the lack of relationship between Mother and her child in contrast to the bond that exists between K.S and his respective foster parent.

The DHS Worker testified the child has developed a strong bond with the caregiver since being in her care for the past two years. (N.T. 4/29/2014, p. 23, lines 24-25); (N.T. 4/29/2014, p. 24, lines 5-7). The DHS Worker further testified,

12

He has adjusted well being there in the timeframe that he has. He is very attached to the grandmother. He's a happy child. He's very comfortable in that environment. And grandmother is very attached to him.

(N.T. 4/29/2014, p. 23, line 25); (N.T. 4/29/2014, p. 24, lines 1-4).

The Women's Christian Alliance Provider Worker testified that the child has developed a strong bond with his respective caregiver. She testified that K.S. has bonded with S.R., where S.R. takes care of all of K.S.'s needs. (N.T. 4/29/2014, p. 41, lines 10-14). The Women's Christian Alliance Provider Worker also testified,

Well, K.S. is deeply in tune with his grandmother. I had an incident where I had to remove K.S. that was the weekend of 3/7/14 and he was so upset that he had to leave his grandmother. It was so hurtful for me. When he returned he was the happiest child on earth. He was not worried about anybody except his grandmother. He loves his grandmother and does look to her for everything.

(N.T. 4/29/2014, p. 43, lines 10-19).

Both the DHS Worker and Women's Christian Alliance Provider Worker testified that K.S. would not suffer irreparable harm if Mother's parental rights were terminated, and that a change of goal to adoption would be in the child's best interest. (N.T. 4/29/2014, p. 23, lines 9-11); (N.T. 4/29/2014, p. 24, lines 8-15); (N.T. 4/29/2014, p. 41, lines 21-24). The testimony of the DHS Worker and Agency Social Worker was deemed to be credible and accorded great weight.

As the testimony before this Court on April 29, 2014 indicates, the evidence is clear and convincing that Mother did not remedy the conditions that caused her child to come into care and thus has been and continues to be unable to provide proper care for her child, warranting involuntary termination of Mother's parental rights pursuant to 23 Pa. C.S. 2511(a) (1), (2), (5), & (8). This Court further concluded that termination of Mother's parental rights would be in the best interest of K.S.

13

## CONCLUSION

This Court, after careful review of the findings of fact, the testimony presented on April 29, 2014 and the law of the Commonwealth of Pennsylvania, finds clear and convincing evidence to terminate Mother, A.R.'s parental rights pursuant to 23 Pa. C.S. 2511(a)(1), (2), (5), & (8). This court further finds that, pursuant to 23 Pa. C.S. 2511(b), termination of A.R.'s parental rights would not have a detrimental effect on the child and would be in the child's best interest. For the foregoing reasons, this Court respectfully requests that the April 29, 2014 Order terminating Mother, A.R.'s parental rights to K.S. be AFFIRMED.

BY THE COURT:

6/27/2014
Date

ALLAN L. TERESHKO, J.

14